MONTGOMERY COUNTY NAT. BANK v. NATIONAL SURETY CO. et al.

District Court, D. Kansas, Third Division. July 17, 1928.

No. 791.

Insurance ☞425—Fidelity surety held not liable for robbery loss after employee terminated employment, though he participated in conspiracy to rob previously hatched.

Surety on fidelity bond to indemnify bank against loss resulting from its president's dishonesty, fraud, or theft held not liable for loss resulting from robbery committed after said president had terminated his connection with bank, even if he participated in the conspiracy to rob, and conspiracy was hatched while bond was in force.

At Law. Action by the Montgomery County National Bank against the National Surety Company and another. On motion to strike allegations in plaintiff's second amended petition. Motion granted.

Bertenshaw & Veeder, of Independence, Kan., for plaintiff.

Henry L. Jost, of Kansas City, Mo., for defendant National Surety Co.

McDERMOTT, District Judge. The defendant issued its fidelity bond on one Geo. C. Robertson, the then president of the plaintiff, by which it agreed to "indemnify officers of Montgomery County National Bank, of Cherryvale, Kansas (employer), against the loss of any money or other personal property (including money or other personal property, for which the employer is responsible), through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of any employee named in the schedule attached or added thereto by acceptance notice, in the performance of the duties of any position anywhere in the employer's service, alone or in connivance with others, while this bond is in force as to such employee."

The agreement further provided: "In the event of the death of any employee during the term of this bond, or of the suspension,

dismissal, or retirement of any employee from the service of the employer during said term, or upon any employee entering into partnership relations with the employer, this bond shall thereupon terminate automatically as to such employee without any action on the part of the surety."

The second amended petition alleges that Robertson ceased to be president of the bank, or in its employ, on January 5, 1926. Therefore, on that date, the liability of the defendant for any acts of Robertson thereafter terminated. This is the plain language of the contract; no rules of construction, or authorities bearing upon construction of this class of contracts, are needed, for there is no room for construction. Courts do not make contracts; they enforce them.

On May 26, 1926, the bank was robbed, and it is alleged that Robertson was in the conspiracy to rob. Suppose he was; suppose he robbed it personally and unaided; why should the surety company respond for a loss that occurred more than five months after its liability ceased?

The plaintiff answers: Because the scheme to rob the bank was hatched while the bond was in force. But that is not the agreement. The agreement was to idemnify against losses that occur while the bond was in force, if the loss was occasioned through the dishonesty, fraud, or theft of the employee. But no loss occurred. The bond does not indemnify against dishonest ideas or plans; it indemnifies against losses. Suppose a dishonest man conceived the idea of seeking employment in a bank, in order that he might steal. He gets the employment, is bonded, and steals while the bond is in force. Could the surety company defend on the ground that the loss was actually suffered when the idea was conceived? The question answers itself; yet here the plaintiff seeks to fix the liability, not as of the date when the loss occurred, but as of the date when the idea was first suggested. That is not the plaintiff's contract.

The allegations with reference to the losses suffered by plaintiff in May, 1926, will be stricken.